UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-543-RGJ

KENNETH WAYNE PARKER                                        Petitioner

v.

GARY BECKSTROM, WARDEN                                      Respondent

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Kenneth Wayne Parker's ("Parker's") Petition for Writ of Habeas Corpus ("Petition"). [DE 1]. Respondent Warden Gary Beckstrom ("Beckstrom") responded [DE 9] and Parker replied [DE 10]. The Magistrate Judge filed Findings of Fact and Conclusions of Law and Recommendation ("R&R"). [DE 17]. Parker timely filed objections. [DE 18]. The matter is ripe. Having reviewed *de novo* the portions of the R&R to which Parker objected, the Court **ADOPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Findings of Fact and Conclusions of Law and **OVERRULES** Parker's objections.

## I.      BACKGROUND

In May 2009, the Kentucky Supreme Court affirmed Parker's convictions for first-degree assault (Count 11), attempted murder (Counts 3, 4, and 21), second-degree assault (Count 5), tampering with physical evidence (Count 6), first-degree robbery (Count 22), conspiracy to traffic in a controlled substance (Count 23), and murder (Counts 2 and 20), but remanded and reversed his conviction for criminal syndication (Count 1). *Parker v. Com.*, 291 S.W.3d 647, 678 (Ky. 2009); [DE 1 at 1].

In December 2010, Parker filed a motion, under Kentucky Rule of Criminal Procedure 11.42, in Jefferson County Circuit Court ("state trial court") to vacate the judgment due to

1

ineffective assistance of counsel.  [DE 9-6 at 1].  Finding that the record was adequately developed to address Parker's claims, the state trial court did not conduct an evidentiary hearing and denied Parker's motion.  [DE 9-7 at 423].  The Kentucky Court of Appeals denied his appeal because Parker's arguments were either "inadequately presented" or "refuted by the record."  [DE 9-8 at 503].  And the Kentucky Supreme Court denied discretionary review.

In July 2014, Parker filed this Petition [DE 1] asserting seven grounds for relief:

*Ground One*: The Respondent holds Parker in custody in violation of the Constitution of the United States pursuant to a judgment obtained from an [sic] trial of charges stemming from separate and unrelated incidents that were tried jointly and in violation of federal due process for the following reasons: (a) the Commonwealth secured an indictment for a charge of Criminal Syndicate that it knew to be unsupported by probable cause and that failed to state an offense sufficient to satisfy constitutional due process for the sole or primary purpose of securing a joint trial, and (b) Parker's counsel failed to pursue meritorious challenges to the Criminal Syndicate charge that would have unraveled the basis for a joint trial.

*Ground Two*: The Respondent holds Parker in custody in violation of the Constitution of the United States pursuant to a judgment obtained in violation of due process because the trial court failed to order separate trials of the discrete and unrelated charges that so affected the proceedings as to render the judgment fundamentally unfair.

*Ground Three*: The Respondent holds Parker in custody in violation of the Constitution of the United States because Parker received ineffective assistance of trial counsel, *i.e.*, inadequate preparation to address the trial testimony of Randall Curry, that resulted in Parker's convictions under Counts 2-6 of the Indictment relating to the McCurley shooting.

*Ground Four*: The Respondent holds Parker in custody in violation of the Constitution of the United States because the Commonwealth of Kentucky secured Parker's convictions under Counts 20-23 of the Indictment with identification testimony admitted by the Kentucky courts as a result of their unreasonable application of clearly established federal.

*Ground Five*: The Respondent holds Parker in custody in violation of the Constitution of the United States because Parker's convictions under Counts 20-23 of the Indictment stem from ineffective assistance of counsel, *i.e.*, inadequate preparation of defense testimony relevant to the Barnes shooting.

*Ground Six*: The Respondent holds Parker in custody in violation of the Constitution of the United States because Parker's conviction under Count 11 of the Indictment stem [sic] from ineffective assistance of trial counsel, *i.e.* a failure to object on proper and meritorious grounds to Officer Hunt's testimony about an out-of-court statement that inculpated Parker in the Baker shooting as well as counsel's acquiescence to and solicitation of testimony regarding witnesses' fear of Parker.

*Ground Seven*: The Respondent holds Parker in custody in violation of the Constitution of the United States because the Commonwealth's erroneous introduction of virulently prejudicial hearsay testimony through Shameka Wright rendered his convictions inconsistent with due process.

[DE 1-2 at 29-58].

Under 28 U.S.C. §§ 636(b)(1)(A) & (B), the Court referred this matter to Magistrate Judge H. Brent Brennenstuhl. [DE 16]. After considering Beckstrom's response, Parker's reply, and the record, the Magistrate Judge denied the Petition and declined to issue a certificate of appealability. [DE 17].

## II.     STANDARD

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). 28 U.S.C. § 2254(d), as amended by AEDPA, provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This is a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted). For a state court's application of law to be "unreasonable," it must be more than merely "erroneous" or "incorrect"; it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotation marks and citations omitted). "The threshold for 'unreasonableness' is 'substantially higher' than it is for incorrectness . . . satisfied only when a state-court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Thurmond v. Carlton,* 489 Fed. App'x 834, 836–37 (6th Cir.2012) (internal citations omitted).

### III.    DISCUSSION

Parker timely objected to the Magistrate Judge's R&R. [DE 18]. The Court will "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After such review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### A.    First Objection: Procedural Default of Prosecutorial Misconduct Claim

Parker asserts that "the Commonwealth secured an indictment for a charge of Criminal Syndicate that it knew to be unsupported by probable cause and that failed to state an offense sufficient to satisfy constitutional due process for the sole or primary purpose of securing a joint trial." [DE 1-2 at 29].

The Magistrate Judge found this claim procedurally barred under Kentucky law because it "could and should have been raised" on direct appeal. [DE 17 at 674 ("Parker procedurally

defaulted . . . by failing to comply with a State procedural rule and his failure provides an adequate and independent grounds for the State's denial of relief.   Federal review of his claim is barred absent his making a showing of cause for the default and actual prejudice arising from the claimed constitutional error")].

Parker objects that he "did not procedurally default his prosecutorial misconduct claim by failing to assert it as an unpreserved claim on direct appeal.   Although the *Recommendation* concludes that Mr. Parker's claim 'could and should have been raised . . . on direct appeal' . . . Kentucky law does not demand that a criminal-defendant appellant seek appellate review of an unpreserved prosecutorial-misconduct claim under the palpable error rule."   [DE 18 at 715].

As support, Parker cites *Martin v. Com.*, 207 S.W.3d 1, 5 (2006).   There, Martin did not object during trial to the prosecutor's improper closing argument.   *Id*. at 2.   Although he did not preserve the issue at trial, he raised it on direct appeal.   *Id.* Because it was unpreserved, the Kentucky Supreme Court applied the palpable error standard[1], held that the improper argument did not constitute palpable error, and affirmed the judgment.   *Id.*  Martin then filed an 11.42 motion, "alleging that his trial counsel's failure to preserve, by contemporaneous objection, the issue of improper prosecutorial argument amounted to ineffective assistance of counsel."   *Id.*  The trial court denied his motion and the Kentucky Court of Appeals affirmed.   *Id.*  On discretionary review, the Kentucky Supreme Court held that an appellant may raise a prosecutorial misconduct claim in an 11.42 motion even if it were denied, under the palpable error standard, on direct appeal.   *Id.* at 5 ("[A] palpable error claim imposes a more stringent standard and a narrower focus than does an

---

[1] "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."   Ky. RCr 10.26.

ineffective assistance claim.  Therefore, as a matter of law, a failure to prevail on a palpable error claim does not obviate a proper ineffective assistance claim").  But *Martin* does not apply here because Parker, unlike Martin, argued his prosecutorial misconduct claim for the first time, not on direct appeal, but in his 11.42 motion.

Parker also asserts that "Kentucky law does not demand that a criminal-defendant appellant seek appellate review of an unpreserved prosecutorial-misconduct claim under the palpable error." [DE 18 at 715].  As a general proposition, this is correct: appellate counsel has discretion to choose which claims to bring on appeal.  *See Hollon v. Com.*, 334 S.W.3d 431, 436 (Ky. 2010)  (quoting *Smith v. Robbins,* 528 U.S. 259, 285 (2000)  ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal").  But in the context of his Petition, Parker's failure to raise the issue on direct appeal, when he "could have and should have," procedurally bars him from arguing it now.  *Leonard v. Com.*, 279 S.W.3d 151, 156 (Ky. 2009)  ("It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding . . . This rule has been applied consistently to bar . . . claims from being brought in collateral attacks . . .  that could and should have been litigated in the direct appeal") (internal quotation marks and citations omitted).  The Court therefore overrules Parker's first objection.

### B.    Second Objection: Application of Federal Due Process Standards To State-Court  Indictments

Parker contends that "[his] trial counsel's failure to challenge the Criminal Syndication charge as failing to state a claim meaningfully prejudiced [him] by subjecting  him to a joint trial that a proper objection on federal-due-process grounds would have prevented."  [DE 18 at 717].

The Magistrate Judge rejected this argument and found that Parker had no right to relief on this ineffective assistance of counsel claim because he is "challenging an indictment in a state criminal prosecution, and the Supreme Court of the United States has not applied the federal guarantee of a grand jury indictment to the states under the Fourteenth Amendment." [DE 17 at 683].

> Parker objects:

> The Kentucky appellate courts' analysis of this issue thus contravened clearly established law by improperly analyzing the due process challenge exclusively under state law principles – and the *Recommendation* replicates that error . . . As such, Mr. Parker's trial counsel's failure to challenge the Criminal Syndication charge as failing to state a claim meaningfully prejudiced Mr. Parker by subjecting him to a joint trial that a proper objection on federal-due-process grounds would have prevented.

[DE 18 at 716-717] (emphasis in original).

Citing *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005), Parker argues that there is "clearly established" Supreme Court precedent for applying federal due-process standards to state-court indictments. *Id.* In *Valentine*, the Sixth Circuit stated that "[w]hile the federal right to a grand jury indictment has never been found to be incorporated against the states . . . courts have found that the due process rights enunciated in *Russell* are required not only in federal indictments but also in state criminal charges. **See De Vonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994); Fawcett v. Bablitch, 962 F.2d 617, 618 (7th Cir. 1992); see also Isaac v. Grider, 2000 WL 571959, at \*4 (6th Cir. 2000); Parks v. Hargett, 1999 WL 157431, at \*3 (10th Cir. 1999)."** *Valentine*, 395 F.3d at 631 (emphasis added)[2]. This quote from *Valentine* refers to circuit courts, not the Supreme Court. The Supreme Court, in fact, has not held that federal due process rights are "required not only in federal indictments but also in state criminal charges." Thus, there is not

---

[2] Parker omitted the bolded text from his Objections [DE 18].

"clearly established" precedent for Parker's proposition.   *See Sanborn v. Parker*, 629 F.3d 554, 564 (6th Cir. 2010)  (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000)  ("In determining what constitutes 'clearly established Federal law' for the purposes of § 2254(d), a federal court *may look only to the holdings of the Supreme Court's decisions, as distinct from dicta*")  (emphasis added). The Court therefore overrules Parker's second objection.

**C.     Third Objection: Procedural Default of Ineffective Assistance of Counsel Claims Based on Failure to Comply With Ky. R. Civ. P. 76.12(4)(c)(v)**

1.  The Kentucky Court of Appeals Erroneously Applied Ky. R. Civ. P. 76.12(4)(c)(v)

Parker argues in the Petition and his objection that: 1) his appellate brief to the Kentucky Court of Appeals complied with Ky. R. Civ. P. 76.12(4)(c)(v) ("CR 76.12"); and 2) even if he did not comply with CR 76.12, CR 76.12 is "inadequate."  [DE 18 at 717-718].

The Magistrate Judge disagreed, declined to "reexamine the state procedural law determination," and found that CR 76.12 was an "'adequate' and 'independent' grounds for denial of relief by the Court of Appeals of Kentucky."  [DE 17 at 696-699].  Because the Magistrate Judge found that Parker's claims under Ground Three, Five, and Six were procedurally barred, he did not address their merits.  Parker contends that this too was error.

 A procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  When "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)) (internal quotation marks omitted). "There are, however, exceptional cases in which exorbitant application of a generally sound rule

renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (holding petitioner's federal habeas claim not procedurally defaulted because petitioner "substantially, if imperfectly" complied with the state procedural rule); *See Post v. Bradshaw*, 621 F.3d 406, 423 (6th Cir. 2010) ("While federal courts are typically barred from hearing a claim that was procedurally defaulted in state court,  when a state erroneously relies upon its own rule of procedural default, the claim is not barred");  *see also Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001)  ("When the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded").

CR 76.12 provides in pertinent part:

> 4) Form and Content
>
> . . .
>
> c)  Organization and contents-Appellant's brief. The organization and contents of the appellant's brief shall be as follows:
>
> . . .
>
> v) An "ARGUMENT" conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning  of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

CR 76.12 "permits a meaningful and efficient review by directing the reviewing court to the most important aspects of the appeal: what facts are important and where they can be found in the record; what legal reasoning supports the argument and where it can be found in jurisprudence; and where in the record the preceding court had an opportunity to correct its own error before the reviewing court considers the error itself."  *Hallis v. Hallis*, 328 S.W.3d 694, 696-697 (2010). "[A] substantial failure to comply [with CR 76.12] permits the appellate court to strike the

noncompliant brief.  The exercise of an appellate court's authority to strike a brief that does not comply with [the rule] is, however, discretionary." *Hudson v. Hudson*, No. 2011-SC-000091-DGE, 2011 WL 3805980, at *2 (Ky. Aug. 25, 2011).

Parker's organized his brief to the Kentucky Court of Appeals as follows:

I.  Introduction

II.  Statement Concerning Oral Argument

III.  Statement of Points and Authorities

IV.  Statement of the Case

V.  Argument: Because the Records Below Did not Refute Parker's 11.42 Claims, the Jefferson Circuit Court Committed Reversible Error When It Summarily Denied Relief.

Procedure/Preservation

Introduction/Standard of Review

A. The Jefferson Circuit Court erred in summarily rejecting Parker's IAC/IAAC claims in connection with his criminal syndication charge

B. The Jefferson Circuit Court erred in summarily rejecting Parker's IAC/IAAC claims in connection with the Commonwealth's hearsay testimony about the Baker shooting

C. The Jefferson Circuit Court erred in summarily rejecting Parker's IAC claims in connection with his counsel's inadequate preparation to cross-examine Randall Curry about the McCurley shooting

D. The Jefferson Circuit Court erred in summarily rejecting Parker's IAC claims regarding his trial counsel's failure to adequately present defense testimony relevant to the Barnes shooting

E. The Jefferson Circuit Court erred in summarily rejecting Parker's IAC/IAAC claims in connection with his drug charges

[DE 9-7 at 433-435].

The Kentucky Court of Appeals declined to address the merits of Parker's arguments in

V(C) and V(D) because it found that he did not provide "any legal authority" in support of them:

> Parker next alleges that trial counsel was ineffective by his 'inexplicable acquiescence in the admission of extensive and inappropriate testimony concerning Commonwealth' s witnesses' fear of testifying against Parker.' Kentucky Rule[s] of Civil Procedure (CR) 76.12(4)(c)(v) mandates that arguments must be supported by ample references to legal authority. See also *Harris v. Commonwealth,* 384 S.W.3d 117, 130-31 (Ky. 2012) (It is not the function or responsibility of the court to research and argue for a party). Parker has failed to provide *any* legal authority to support this allegation of error. Parker cites to his direct appeal in a footnote, providing only quotations from various witnesses rather than any legal authority to support his argument. Therefore, we decline to address it.
>
> The same deficiency exists for Parker's next two arguments — counsel's perceived error in cross-examination of a witness and his failure to call another witness. Parker does not offer *any* legal authority in support of either contention. Therefore, we must refrain from addressing those arguments as well.

[DE 9-8 at 500]  (emphasis in original).

The Kentucky Court of Appeals cited *Harris*, a Kentucky Supreme Court case, to support

its finding that Parker failed to comply with CR 76.12. But *Harris* was not the first case, nor is it

the only case, to find that an appellant violated CR 76.12. *Hadley v. Citizen Deposit Bank*, 186

S.W.3d 754, 759 (Ky. App. 2005) (finding claim waived because appellant provided "absolutely

no legal authority to support her position" and only one "substantive argument"); *Cherry v.

Augustus*, 245 S.W.3d 766, 781 (Ky. Ct. App. 2006) (finding claim waived because appellant's

"brief lacks any citations of authority pertinent to the issue"); *Hager v. Allstate Ins. Co.*, No. 2007-

CA-002599-MR, 2009 WL 3320938, at *34 (Ky. Ct. App. Oct. 16, 2009) (finding claim waived

because appellant did not "present any authority" on the issue); *Stigall v. Com.*, No. 2010-SC-

000393-MR, 2011 WL 2438377, at *3 (Ky. June 16, 2011) (finding "non sequitur argument"

waived because it "lack[ed] legal citation, a request for relief, and [was] not properly briefed");

*Craig v. Kulka*, 380 S.W.3d 546, 548 (Ky. Ct. App. 2012) (finding claim waived because "aside

from the four rules cited in his statement of points and authorities, Craig utterly fails to provide 'ample supportive references to the record and citations of authority pertinent to each issue of law'").

Parker cited "voluminous" authority in his brief to the Kentucky Court of Appeals:

The subsection of [the brief] labeled 'INTRODUCTION / STANDARD OF REVIEW' reviews the generally-applicable legal principles governing both trial courts' and appellate courts' review of IAC and IAAC claims and more than adequately complies with CR 76.14(4)(c)(v) by providing references to the legal authorities pertinent to Parker's IAC / IAAC allegations. Among the other authorities cited, addressed, and/or discussed in Parker's brief are the seminal federal and state authorities that govern the two 'prongs' necessary to show a valid IAC or IAAC claim, including the role that practice norms can play in that analysis, the nature of appellate review of post-conviction courts' determinations, and, because of the Jefferson Circuit Court's repeated deploying of 'reasonable trial strategy' rhetoric in support of its resolution of Parker's motion, a lengthy description of how courts evaluate 'trial-strategy' issues.

[DE 1-2 at 44].

The Kentucky Court of Appeals found that he violated CR 76.12 by failing to provide "any legal authority." This is incorrect: Parker provided "ample authority" by citing more than twenty cases in the INTRODUCTION/STANDARD OF REVIEW. *Cf. Harris*, 384 S.W.3d at 130 (one citation is not "ample" authority).

Further, the Kentucky Court of Appeals inconsistently applied CR 76.12 to Parker's brief. The Kentucky Court of Appeals considered some of Parker's arguments in section V(B)[3] but not others, even though that section, like V(C) and V(D), only included citations to the trial record and the Kentucky Supreme Court's opinion on Parker's direct appeal.

CR 76.12 "permits a meaningful and efficient review by directing the reviewing court to . . . what legal reasoning supports the argument and where it can be found in jurisprudence."

---

[3] "B. The Jefferson Circuit Court erred in summarily rejecting Parker's IAC/IAAC claims in connection with the Commonwealth's hearsay testimony about the Baker shooting." [DE 9-7 at 435].

12

*Hallis*, 328 S.W.3d at 696-697.  Parker's brief enabled the Kentucky Court of Appeals to perform "a meaningful and efficient review" because it "significantly, if imperfectly" directed the Kentucky Court of Appeals to the "legal reasoning" that supported his argument.  *Lee*, 534 U.S. at 376.  As a result, the Court finds that the Kentucky Court of Appeals erred when it applied CR 76.12 to bar his claims.  Accordingly, this Court is not precluded from evaluating the merits of the claims in Grounds Three, Five, and Six.

Because the state trial court adjudicated his claims on the merits, this Court must apply AEDPA's deferential standard of review.  28 U.S.C. § 2254(d); *See Johnson v. Beckstrom*, No. CIV.A. 08-194-ART, 2011 WL 1808334, at *22 (E.D. Ky. May 12, 2011) (Thapar, J.) ("[T]he Kentucky Court of Appeals . . . refused to reach some of [the ineffective assistance claims] in reliance on a procedural bar.  In four cases, that was error.  However, the state trial court adjudicated three of these four claims on the merits.  For these three claims, this Court must 'look[ ] through' to the state trial court's decision and determine whether it withstands AEDPA's deferential standard or review") (quoting *Sweet v. Sec'y, Dept. of Corr.,* 467 F.3d 1311, 1317 (11th Cir.2006)).

    2.    <u>Parker's IATC Claims in Grounds Three, Five, and Six are Meritless</u>

        *i.    Standard: Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, a defendant must show that: 1) "counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and 2) "the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The prejudice inquiry requires the defendant "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695.

The Court need not conduct the two prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one. *Id.* at 697. For example, if the Court determines the defendant fails to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient. *Id.*

When a habeas petitioner claims that his counsel has been ineffective, the assessment of trial counsel's judgment requires another layer of deference: the Court is "required not simply to give [the] attorney[ ] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did." *Cullen*, 563 U.S. at 196 (internal quotation marks and citation omitted). Thus, the nexus of the AEDPA and *Strickland* compels the Court to be "doubly deferential," and "give[ ] both the state court and the defense

attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (quoting *Id.* at 190) (internal

quotation marks omitted).

> ii.    *Ground Three: Ineffective assistance of trial counsel: Cross-examination of Randall Curry*

Parker argues that his trial counsel was ineffective because he failed to adequately cross-

examine Randall Curry, a key witness for the Commonwealth.  [DE 1-2 at 41-43].  Parker also

asserts that a "more informed and extensive cross-examination of Curry could well have tipped

the balance on [those charges] given that the only other evidence of Parker's connection to that

crime" came from a "not-credible" witness and a "functionally useless" one.  *Id.* at 43.

The state trial court saw things differently:

> Parker next argues that his counsel was ineffective in addressing the testimony of witness Randall Curry. However, Parker fails to articulate with specificity the serious and unprofessional errors his trial counsel committed, other than vague accusations. Upon review of the witness' testimony and the record of counsel's questioning, the Court finds that [trial counsel's] questioning falls squarely within the purview of trial strategy and was reasonable under the circumstances . . . In addition, the Court finds that Parker cannot convincingly show that there is a reasonable probability that the result of his trial would have been different with the altered strategy by counsel.

[DE 9-7 at 427].

"[T]he Confrontation Clause guarantees an opportunity for effective cross–examination,

not cross–examination that is effective in whatever way, and to whatever extent, the defense might

wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)  (internal quotation marks omitted).

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the

professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002)

(citing *Henderson v. Norris,* 118 F.3d 1283, 1287 (8th Cir.1997)).  "Impeachment strategy is a

matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply

because in retrospect better tactics may have been available." *Id.*

Parker contends that his trial counsel was ineffective because he "secur[ed] the introduction of otherwise inadmissible hearsay accounts of the circumstances leading up to the McCurley shooting and Parker's involvement from Parker's brother and another co-defendant that the Commonwealth could not have introduced otherwise because they would constitute paradigmatic Confrontation Clause violation."   [DE 1-2 at 41].

On direct-examination during Parker's trial, Curry testified that:

> About a week and a half to two weeks after the McCurley shooting, Curry had a conversation at B-Line Food Mart with Kenneth Parker about a gun. VR 15; 09/13/2005; 10:41:06 and following. Curry [saw] Defendant in possession of 9 mm handgun numerous times. VR 15; 09/13/2005; 10:43:00. He asked Defendant  if he could use Defendant's 9 mm handgun, and Defendant said he had to get rid of it because of a shooting that happened by Jewish Hospital. VR 15; 09/13/2005; 10:41:43 and following.
>
> Defendant explained that when leaving the Robin's Roost Skating Rink with his brother Deshawn Parker and Marcus Stallard in a car driven by William Bethel, Defendant [saw] two rival gang members riding in a car on the interstate. VR 15; 09/13/2005; 10:44:02; 10:47:31, 10:48:40. Parker's car got behind them and followed them when they got off the interstate. VR 15; 09/13/2005; 10:44:02. Parker and cohorts pulled up behind them and Defendant and his brother started shooting their guns. VR 15; 09/13/2005; 10:44:02 and following. Defendant did not say how many shots were fired, but he did say that one of the reasons he got rid of the gun is because it jammed too much. VR 15; 09/13/2005; 10:46:23 and following.

[DE 9-6 at 409].

On cross-examination:

> Curry denied that he was at the Robin's Roost Skating Rink on the night of the shooting but testified that someone told him people were there. VR 15; 09/13/2005; 11:11:08. Curry admitted that Defendant was not the only one who talked to him about the McCurley shooting after it happened; William Bethel also talked to him about it. VR 15; 09/13/2005; 11:12:08. Curry first denied that Deshawn Parker, Dominque Coffey, or Marcus Stallard told him anything about the shooting after it happened. VR 15; 09/13/2005; 11.:12: 12. He later admitted that Deshawn Parker talked to him about the shooting but said he could not remember the details of that conversation. VR 15; 09/13/2005; 11:24:00. Curry confirmed that what he knew about the shooting was based on what he was told because he was not there. VR 15; 09/13/2005; 11:12:38.

. . .

> Curry said he talked to Deshawn Parker about the shooting after Defendant talked to him about it. VR 15; 09/13/2005; 11:24:30. Then after confronted by trial counsel with a transcript of his interview with Tarter, Curry corrected himself and said that Deshawn Parker talked to him about the shooting before Defendant did. VR 15; 09/13/2005; 11:24:39. Deshawn Parker gave him the details about the shooting and Defendant told him the same thing a few days later. VR 15; 09/13/2005; 11:24:39 and following. Curry admitted that the details of the shooting first came from Deshawn Parker; then he talked to Defendant about the 9 mm, and Defendant told him it jammed and he got rid of it. VR 15; 09/13/2005; 11:26:00 and following.

*Id.* at 411-412.

Although trial counsel elicited otherwise inadmissible evidence from Curry about what Deshawn Parker said, he may have done so with a purpose: to show that Curry, who had much to gain from his cooperation with the Commonwealth[4], was not credible and may have fabricated the story about Parker confessing to him to solicit favor with the Commonwealth. Because Curry admitted that Deshawn Parker, not Kenneth Parker, first told him about what happened, trial counsel could argue to the jury that Kenneth Parker never actually talked to Curry.  He could also argue that Curry implicated Kenneth Parker based solely on what Deshawn Parker told him.  Moreover, even if the jury believed that Kenneth Parker told Curry that he was involved in the shooting, Curry admitted on cross that Kenneth Parker told him that his gun "jammed" and that he did not think he shot anyone.

Parker also argues that trial counsel was ineffective because he failed to "probe . . . further" after "Curry served up proverbial 'softballs' such as the fact that his desire to curry favor with prosecutorial authorities was so acute that he had also testified before a federal grand jury . . .  which plainly caught defense counsel unaware."  [DE 1-2 at 42].  But at a

---

[4] At the time of the trial, Curry was serving a prison sentence.  On direct, Curry testified that, in exchange for his testimony, the Commonwealth agreed to write a letter to the parole board on his behalf.  [DE 9-6 at 408].

bench conference, Curry elaborated that he testified before a federal grand jury "about a possible federal investigation into [Parker's activities]."  [DE 9-6 at 413].  "Prob[ing]" Curry about his grand jury testimony could have opened the door to highly prejudicial testimony about Parker's other illicit activity.  And "prob[ing]" was likely unnecessary: the jury had heard on direct examination that, in exchange for his testimony, the Commonwealth planned to write a letter to the parole board.  There was no question that Curry was a biased witness.

> Parker next argues:

> > [W]hen Curry committed himself to particular factual accounts that were inconsistent with other available evidence, *e.g.*, the suggestion that he had been told that *Wilbert Bethel* drove a borrowed automobile during the shooting . . . which was inconsistent with not only Coffey's testimony but also Marcus Stallard's prior testimony from the DeShawn Parker trial, and defense counsel could have and should have sought to introduce relevant portions of the unavailable Stallard's former testimony under oath, to attempt to show to the jury that Curry was simply inventing facts.

[DE 1-2 at 42]

Before trial, the Commonwealth moved the trial court to allow it to introduce Stallard's prior testimony during Parker's trial.   [DE 9-6 at 414].   Because Stallard's testimony implicated Parker in the murder, Parker objected to its admission during the trial.  *Id.*  The trial court denied the Commonwealth's motion and ruled that the testimony would be excluded.  *Id.*  If Parker's trial counsel had moved to admit a portion of Stallard's testimony during the trial, he would risk "opening the door" to all of it.  *See Com. v. Stone*, 291 S.W.3d 696, 701–02 (Ky. 2009)  ("'Opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof"); *see also* KRE 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded

statement which ought in fairness to be considered contemporaneously with it"). Trial counsel's decision not to take that risk was not unreasonable.

Parker next argues that "[his] trial counsel failed to utilize Curry's January 2, 2001 statement to [the detective] to impeach the trial testimony with inconsistencies, including, without limitation, Curry's trial testimony about who was present at the skating rink the night of the shooting that was inconsistent with both the prior statement and all other factual accounts presented." [DE 1-2 at 42]. This is not true: Parker's trial counsel successfully used the prior statement to impeach Curry with the inconsistency between his trial testimony (where he said Parker was the first to tell him what happened) and his prior statement (where he said Deshaun Parker was the first to tell him what happened). [DE 9-6 at 411-412]. While trial counsel could have impeached Curry with his inconsistent testimony about who was at the skating rink, his failure to do so does not render his performance deficient. And it does not "undermine confidence" in the outcome of Parker's trial. *Strickland*, 466 U.S. at 694.

The Court finds that the state trial court did not "unreasonably" apply *Strickland* in denying this ineffective assistance of counsel claim. The Court therefore denies Parker's claims in Ground Three.

        iii.    *Ground Five: Ineffective assistance of counsel: Adequacy of preparation of defense testimony relevant to the Barnes shooting.*

Parker argues that his trial counsel was ineffective because he failed to call Joseph L. Taylor during his case-in-chief:

> Joseph L. Taylor, another individual present at the time of the Barnes shooting [gave the police a statement on September 11, 2002] that substantially contradicte[d] both Coffey's and Rommell Taylor's accounts, that (1) Rommell Taylor never had an opportunity to see the fourth individual's face given the distance between them and the fact that the assailant had a ball cap pulled down over his face . . . and (2) contrary to Coffey's and Rommell Taylor's accounts, the fourth person in the ball cap led the others down the alley where the shooting

occurred (making it impossible for them to have heard this individual fire shots from behind them as they stated).

[DE 1-2 at 50].

The state trial court disagreed:

[T]rial counsel's decision not to call witnesses falls squarely within the purview of trial strategy and was reasonable under the circumstances. The record shows that Taylor would likely have been subjected to vigorous cross-examination by the Commonwealth regarding the inconsistencies in his prior statements. Such testimony could have been far more detrimental to Parker than simply not calling Taylor to testify. Accordingly, Parker is not entitled to relief for this allegation of ineffective assistance of counsel.

[DE 9-7 at 427-428].

Joseph Taylor gave two statements to the police. In his first statement, he "denied seeing anyone involved in the shooting or seeing anyone on the street during the shooting or when he was driving around after the shooting. Disc. P. 1086(b), 1090(b). He admitted that at one point he saw a gold car that might have had two people in it. Disc. P. 1087(b)-1088. He did not describe seeing anyone that night." [DE 9-6 at 418]. But when he spoke with the police six months later, his story changed:

This time Joseph Taylor claimed he saw two individuals at the scene of the shooting. One was a man he later learned was Coffey. Disc. P. 1061. The second was a short (5'5-5'8) black man he described as wearing a dark colored hat and a dark blue sweatshirt. Disc. P. 1079, 1062. He described the hat or ballcap as 'pulled down over his face where . . . you couldn't see no more than his nose and mouth.' Disc. P. 1062 . . . Joseph Taylor said he remained in the truck even when Rommell Taylor was outside the truck. Disc. Pps. I 064-65. Joseph Taylor stated that the second guy had already started walking toward the house when Rommell Taylor and William Barnes started that way. Disc. P. I 067. He went on to say that William Barnes was the last one walking toward the house and that it was after Barnes was out of his sight that he heard gunshots. Disc. P. 1067.

*Id.*

"In order to present an ineffective assistance of counsel claim based upon a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would

have been and prove that the witness' testimony would have produced a different result." *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D.Mich.2003).  As illustrated by *Seymour v. Walker*, 224 F.3d 542, 556 (6th Cir. 2000), this is a high bar.  There, Seymour "attached to her habeas petition an affidavit from Julie Buskirk, in which Buskirk states that she had personal knowledge of many matters relevant to Seymour's defense and that, had she been called to testify, she would have contradicted the testimony of several prosecution witnesses." *Id.*  But the Sixth Circuit nonetheless denied her claim that her trial counsel was ineffective in failing to call Buskirk at trial:

> Although Buskirk's testimony may indeed have bolstered Seymour's defense, this court cannot say that Seymour's counsel was defective for failing to call her. Buskirk cannot be considered an essential witness by any means: she was not a witness to the shooting, and, as the sister of the defendant, would likely be considered by the jury to be biased. To consider Seymour's counsel defective for failing to call her to testify would be to engage in precisely the kind of second-guessing of trial strategy that the Supreme Court strongly discouraged in *Strickland*. This claim must therefore fail.

*Id.*

If Seymour's claim failed to clear the high bar, then Parker's claim barely gets off the ground.  Parker, unlike Seymour, did not attach an affidavit to his Petition.  Because Joseph Taylor made two statements and the Court does not have an affidavit from him, Parker has not proven that Joseph Taylor would have been available to testify at trial and would have testified favorably. *See Malcum*, 276 F. Supp. 2d at 679 ("Without some showing of their proposed testimony, this Court is unable to determine if trial counsel's failure to . . . to call these individuals as witnesses was either a professional lapse or a strategic or tactical choice.  The Court is also unable, in the absence of a showing as to what the witnesses' testimony would be, to determine whether Petitioner was prejudiced by the failure of trial counsel to . . . call these witnesses").  But, even assuming Joseph Taylor was available and would testify favorably, trial counsel's decision not to call him was still not objectively unreasonable.  First, Rommell Taylor could have seen the fourth

man's face, even if Joseph Taylor could not.  Likewise, because Joseph Taylor lost sight of the men, he does not know how close they were to one another once they walked out of view.  [DE 9-6 at 418].   Second, Joseph Taylor's description of the fourth man closely matched Parker.  *Id.* at 419.  Third, in weighing the *Neil v. Biggers* factors, the Kentucky Supreme Court found that the Rommell Taylor had a sufficient opportunity to view Parker.  *Parker*, 291 S.W.3d at 662.  Fourth, and as noted by the Jefferson Circuit Court, Joseph Taylor "would have been subjected to vigorous cross-examination by the Commonwealth regarding the inconsistencies in his prior statements.  Such testimony could have been far more detrimental to Parker than simply not calling Taylor to testify."  [DE 9-7 at 427-428].

The Court finds that the state trial court did not "unreasonably" apply *Strickland* in denying these ineffective assistance of counsel claims.  The Court therefore denies Parker's claims in Ground Five.

> iv.    *Ground Six[5]: Ineffective Assistance of Counsel: Testimony About Witnesses' Fear of Parker*

Parker alleges that his trial counsel was ineffective because he "acquies[ed] in the admission of extensive and inappropriate testimony concerning Commonwealth's witnesses' fear of testifying against Parker . . . The record does not reflect that Parker's trial counsel made any substantive – let alone positive – use of this testimony at trial (belying any reasonable

---

[5] In Ground Six, Parker alleges that trial counsel was ineffective because: 1) he "fail[ed] to object on proper and meritorious grounds to Officer Hunt's testimony about an out-of-court statement that inculpated Parker in the Baker shooting"; and 2) he "acquies[ed] to and solici[ted] testimony regarding witnesses' fear of Parker."  [DE 1-2 at 51].  Both the Kentucky Court of Appeals and the Magistrate Judge denied the first claim on the merits.  [DE 9-8 at 500; DE 17 at 704].  That said, neither addressed the second claim because the Kentucky Court of Appeals found that it violated CR 76.12 and the Magistrate Judge found that it was procedurally barred. [*Id.*; *Id.* at 698].   Because the Court found that it is not procedurally barred, the Court will consider it on the merits.

characterization of it as tactical)." [DE 1-2 at 55]. Parker's argument focuses on three witnesses: Sheldon Wright[6], Shameka Wright[7], and Dominque Coffey[8].

Denying this claim on the merits, the state trial court found that:

The record indicates that [trial counsel] effectively examined and cross-examined the witnesses with regard to the shooting. The record shows that counsel attempted to discredit testimony that was unfavorable to Parker, as well as elicited beneficial testimony when possible. Parker is not guaranteed perfectly errorless counsel, or counsel judged ineffective by hindsight, but instead counsel   likely   to   render and rendering   reasonably   effective assistance. *McQueen v. Commonwealth*, 949 S.W.2d 70 (Ky. 1997). Furthermore, the record shows that the jury was admonished to disregard certain damaging testimony, and the Kentucky Supreme Court subsequently found that the admonition was a curative measure. Therefore, the Court denies Parker 's Motion with regard to the allegation of ineffective assistance of counsel.

[DE 9-7 at 427].

The Kentucky Supreme Court considered Mr. Wright's testimony on direct appeal:

We agree with Parker that Wright's statement about fearing that he would be harmed for testifying against Parker was improper. Jury verdicts must be based upon admissible evidence, not jurors' fear of the allegedly vengeful nature of a defendant. And the Commonwealth does not argue in its brief that Wright's statements were proper. But we disagree with Parker's contention that a mistrial was necessary.

. . .

[T]his case does not fall within [one of the exceptions for a mistrial] because the improper testimony was relatively brief in nature given the lengthy trial. And defense counsel did not object when Wright first mentioned fearing retribution and, in fact, raised that issue himself during cross-examination. Also, although not mentioned by the parties, the record reflects that at one point, Coffey testified without objection that he did not want to 'turn against' Parker because he feared for

---

[6] At trial, Sheldon Wright, a "reluctant witness, *see Parker*, 291 S.W.3d at 657, testified during the Commonwealth's direct examination, *and without any objection from the defense*, 'that he did recall telling a detective he (Wright) might be hurt if he testified in Court.'" [DE 1-2 at 55] (emphasis in original).

[7] Shameka Wright testified *without objection* about seeking witness protection following her August 12, 2002 statement to police when Parker's cousin started following and threatening her and calling her a "snitch bitch." VR Tape 12 (9/8/2005) at 17:41-17:43." *Id.* (emphasis in original)

[8] "The Commonwealth's star witness, Coffey, testified *without objection* that he did not want to 'turn against' Parker because of fears for his safety. *See Parker*, 291 S.W.3d at 658; VR Tape 14 (9/12/2005) at 15:12:37-15:13:05." *Id.* (emphasis in original).

his safety. In short, we believe the trial court's admonition was a sufficient curative measure, rendering a mistrial unnecessary.

*Parker*, 291 S.W.3d at 658.

"As a threshold matter, in a trial of any size, numerous potentially objectionable events occur . . . [E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment.  Learned counsel therefore use objections in a tactical manner." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006).

The Kentucky Supreme Court's ruling that the admonition was effective logically forecloses any possibility that Mr. Wright was prejudiced by trial counsel's allegedly deficient performance.  Likewise, the Kentucky Supreme Court implies that the admonition, although directly related to Mr. Wright's testimony, extended to Coffey's testimony:  "Also, although not mentioned by the parties, the record reflects that at one point, Coffey testified without objection that he did not want to 'turn against' Parker because he feared for his safety.  In short, we believe the trial court's admonition was a sufficient curative measure, rendering a mistrial unnecessary." *Parker*, 291 S.W.3d at 658.

Coffey's testimony, like Wright's, was "relatively brief in nature given the lengthy trial," and therefore the admonition cured any prejudice caused by trial counsel's allegedly deficient performance.  *See Goetz v. Meko*, No. 2:11CV159-DCR-EBA, 2012 WL 3480037, at *11 (E.D. Ky. May 24, 2012)  ("The Kentucky Court of Appeals held that no actual prejudice was suffered by Goetz as . . . the admonition cured any error . . . [caused] . . . by the 'fleeting' statements.  Given that the state court applied . . . *Strickland*  . . . and that the Supreme Court has found that admonitions can cure prejudicial errors this Court finds the state court decision to be reasonable"); *Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) (trial counsel's failure to object to testimony about a death threat by the petitioner was not ineffective assistance of counsel); *Jones*

*v. Moss*, No. 5:18-CV-05698-BLF, 2020 WL 1031888, at *35 (N.D. Cal. Mar. 3, 2020) ("Trial Court's admonitions to the jury—both during the Prosecution's closing remarks and again in its closing instructions—cured any potential for harm . . . Trial Counsel's failure to object to such remarks on constitutional grounds was not prejudicial").

As to Ms. Wright, she testified on cross that "since August 2000, Parker . . . had not threatened her or sent anyone to threaten her.  VR 12; 09/08/2005; 17:26:50 and following."  [DE 9-6 at 405].  However, on redirect, "the Commonwealth asked about police putting her up in a hotel room after [Parker's cousin] followed her, threatened her, and called her names. VR 12, 09/08/2005; 17:42:09 and following . . . Shameka Wright aggressively and repeatedly explained that [Parker] had nothing to do with [his cousin's] acts and that [Parker] had nothing to do with it. VR  12; 09/08/2005; 17:42:09, 17:45:06."  *Id.* Because Ms. Wright did not testify that Parker directly threatened her and, in fact, denied that he did so, trial counsel's decision not to object to her testimony was not unreasonable.

The Court finds that the state trial court did not "unreasonably" apply *Strickland*.  The Court therefore denies Parker's claims in Ground Six.

**D.    Fourth Objection: The State Courts' Application of  Supreme Court Precedent To Rommell Taylor's Eyewitness Identification**

Parker argues that the Kentucky Supreme Court erroneously applied "clearly established" Supreme Court precedent to an eyewitness's pretrial identification of him.  Parker claims the Kentucky Supreme Court misapplied the law in two ways: 1) "[T]he trial court's and Kentucky Supreme Court's treatment of the 'accuracy of prior description' actor as 'irrelevant' is contrary to United States Supreme Court precedent.  In fact, the *absence* of any prior description is a factor that weighs in favor of a defendant. . . . because the absence of a pre-identification description means there is no fixed point of reference to assist the reliability determination"; and 2) "[T]he

Kentucky Supreme Court's contention that '[t]he relatively brief period of time in which Taylor

viewed Parker . . . fall[s] within' the 'degree of attention' factor instead of the 'opportunity to view

factor' is directly contrary to *Manson v. Brathwaite* . . . where the Court examined the witness's

testimony 'that for two to three minutes he stood at the apartment door, within two feet of the

respondent' in its analysis of the 'opportunity to view' factor."  [DE 18 at 718-719] (emphasis in

original).

> The Magistrate Judge disagreed with Parker:

> [C]ontrary to Parker's bare assertion, the Supreme Court of Kentucky appropriately considered the required factors in *Biggers* in reaching its conclusion. In sum, Parker has failed to demonstrate that the Supreme Court of Kentucky's application of the rule in *Biggers* to the facts in the case was objectively unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 407-413 (2000).  Additionally, Parker's assertions do not constitute the clear and convincing evidence necessary to overcome the presumption of correctness accorded the factual determinations of the Supreme Court of Kentucky. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[DE 17 at 708].

Parker objects that the Magistrate Judge failed to address the state courts' "departures from

clearly established precedent" and to "acknowledge the substance of his argument."  [DE 18 at

719].

Parker claims that "the *absence* of any prior description is a factor that weighs in favor of

a defendant . . . because the absence of a pre-identification description means there is no fixed

point of reference to assist the reliability determination."  *Id.* at 718 (emphasis in original).  As

support, Parker cites *Kyles v. Whitley*, 514 U.S. 419, 444 and *Sumner v. Mata*, 455 U.S. 591, 597.

Parker asserts that *Kyles* "observ[ed]" that the "'evolution over time of a given eyewitness's

description can be fatal to its reliability.'"  *Id.* at 719.  But, because the eyewitness in his case never

gave a description of Parker, his description cannot evolve.  *Sumner* is likewise unhelpful for

Parker.  Parker suggests that the Kentucky Supreme Court violated the command of *Sumner* by

not making "a finding of historical fact [for each of the *Neil v. Biggers* factors]." *Id.* Remanding *Sumner*, the Supreme Court instructed the Ninth Circuit "to apply the statutory presumption [that the state court's factual findings were correct] or explain why the presumption was not applicable." *Sumner*, 455 U.S. at 598. The Supreme Court's command in *Sumner* was to the Ninth Circuit, not a state appellate court. Thus, *Sumner* does not apply here.

Parker also argues that, under *Manson v. Brathwaite*, 432 U.S. 98, 114, the Kentucky Supreme Court erred by considering "'[t]he relatively brief period of time in which Taylor viewed Parker . . . within' the 'degree of attention' factor instead of the 'opportunity to view factor.'" [DE 18 at 719]. The Court disagrees. In the "opportunity to view" section of the Opinion, the Kentucky Supreme Court, like the Supreme Court in *Manson*, considered the amount of the time and the conditions under which the eyewitness interacted with Parker: "Taylor testified that all four men involved in the drug deal were face-to-face for about five minutes and that the lighting was sufficient for him to see the others." *Parker*, 291 S.W.3d at 662; *Cf. Manson*, 432 U.S. at 114 ("Glover testified that for two to three minutes he stood at the apartment door, within two feet of the respondent"). The Kentucky Supreme Court also noted "[t]he relatively brief period of time in which Taylor viewed Parker *and Taylor's testimony that he was not focused upon Parker during that time more properly fall under [the degree of attention factor]*[9]." *Parker*, 291 S.W.3d at 663 (emphasis added).[10] Because evidence that an eyewitness was "not focused" on a defendant is properly considered in the "degree of attention" section of the Opinion, this is far from an "unreasonable application" of Supreme Court precedent. The Court overrules Parker's objection.

---

[9] The Kentucky Supreme Court found this factor in Parker's favor.
[10] Parker omitted the italicized text from his Petition.

5.    Fifth Objection: Certificate Of Appealability

The Magistrate Judge recommended that a Certificate of Appealability ("COA") should be denied "as to all of the claims asserted in Grounds One through Seven" of Parker's Petition.  [DE 17 at 713]

Parker objects, arguing that "[b]ased upon the arguments referenced above, at a minimum, reasonable jurists could debate whether Mr. Parker's claims entitle him to habeas relief.  As, even if the Court ultimately denies that relief, it should allow a Certificate of Appealability permitting Mr. Parker to seek appellate review."  [DE 18 at 720].

A COA may issue only if the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "Where a district court has rejected the constitutional claims on the merits . . .  [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  When, however, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*  In such a case, no appeal is warranted. *Id.*

Here, as to the claims the Court and the Magistrate Judge denied on the merits, the Court finds that Parker has not "demonstrate[]d that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.   Likewise, as to Ground One, which is denied based on a procedural ground, Parker has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*   Thus, a COA is not warranted as to any of the claims asserted in Grounds One through Seven.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. The Court **ADOPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Findings of Fact and Conclusions of Law [DE 17].

2. The Court **ADOPTS** the Magistrate Judge's Recommendations [DE 17] that Parker's Petition and certificate of appealability be denied as it pertains to his claims in Ground One through Seven of the Petition.

3. The Court **OVERRULES** Parker's objections [DE 18] to the Magistrate Judge's Recommendations.

4. The Court **DISMISSES WITH PREJUDICE** Parker's Petition [DE 1].

5. The Court will not issue a certificate of appealability.

6. The Court will enter a separate Judgment.

Copies to:      Counsel of record